* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Rowell. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Rowell and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission had jurisdiction over this matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties had been properly designated, and there is no question as to joinder or non-joinder of parties.
4. That the plaintiff alleges to have sustained a compensable injury by accident on March 27, 2003.
5. That defendants denied compensability.
6. That an employment relationship existed between plaintiff and the defendant-employer during some or all of the time period of the injury.
7. That pursuant to a Form 22, plaintiff's average weekly wage at the time of the alleged March 27, 2003 injury was $374.40, which yielded a compensation rate for $249.61.
8. The parties stipulated into evidence as Stipulated Exhibit #1, the Pre-Trial Agreement as modified and initialed by the parties.
9. The parties stipulated into evidence as Stipulated Exhibit #2, a notebook containing medical records.
10. The parties stipulated into evidence as Stipulated Exhibit #3, Industrial Commission Forms.
11. The parties stipulated into evidence as Stipulated Exhibit #4, a recorded statement of the plaintiff dated July 10, 2003.
12. The parties stipulated into evidence as Stipulated Exhibit #5, a one-page document entitled "Benefits Statement".
13. The parties stipulated into evidence as Stipulated Exhibit #6, personnel records of plaintiff. *Page 3 
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 33 years old. Plaintiff began work for defendant in 2000. Plaintiff testified he was employed as a bailer operator, which involved placing cardboard on a conveyor belt, packing the cardboard together and making a bale out of it.
2. Defendant completed a Form 19 on April 23, 2003, documenting that on April 15, 2003, plaintiff reported that on March 27, 2003, he sustained an alleged injury to his left shoulder when he was coming off a tank and his right hand slipped causing a left shoulder strain.
3. Plaintiff filed a Form 18 on July 1, 2003, indicating that on March 27, 2003, as he was climbing off of a tank, he slipped and fell causing injury to his left shoulder and neck.
4. Defendant filed a Form 61 Denial on November 20, 2003, on the grounds that plaintiff had not suffered an injury by accident arising out of and in the course of his employment; and that there was no causal connection between plaintiff's condition and his employment.
5. Bobby Grimes, plant manager at the Hickory plant, completed a report of injury by plaintiff on April 15, 2003. The report indicates that plaintiff told Mr. Grimes that he had been hurt on one of the last Fridays in March, 2003, and that plaintiff indicated that had told Mr. Grimes about the injury when it allegedly happened. Mr. Grimes noted in the report that this was not true. Mr. Grimes noted that he was in Alabama on Friday, March 21, 2003, and on Friday, March 28, 2003, plaintiff took a day of vacation. On April 17, 2003, plaintiff came to *Page 4 
Mr. Grimes and indicated that he had been hurt on Thursday, March 27, 2003, and that he had initially had his dates mixed up.
6. Plaintiff reported to Mr. Grimes that his hand slipped off a pipe and all of his weight went to his other hand on another pipe. Mr. Grimes noted in the report that plaintiff told him that he was coming off the hydraulic tank and was about one foot off of the ground when his hand slipped. Plaintiff did not tell Mr. Grimes that his foot slipped. The Form 19 notes that plaintiff stated that his hand slipped. Mr. Grimes noted in his report and also testified at the hearing, that he did not feel plaintiff had an accident. The report states that Mr. Grimes had fired plaintiff's cousin on April 14, 2003 and the very next day, this alleged accident surfaced. Based on the testimony and the demeanor of the witnesses, the undersigned find Mr. Grimes to be credible, and finds that plaintiff did not report the alleged incident to his employer on March 27, 2003.
7. Prior to the hearing, plaintiff gave a recorded statement to Linda Hodges of GAB Robins on July 10, 2003. At that time, he stated he was holding onto a pipe with his left hand and holding the top part of the hydraulic tank with his right hand. He put one foot on a pipe, and was going to bring his other foot down and slipped. He held on with his left arm.
8. Plaintiff testified at the hearing that on March 27, 2003, he had climbed on top of a hydraulic tank and was using an air hose to blow the tank off. To climb on top of the hydraulic tank, plaintiff used a series of pipes. On direct examination, plaintiff testified that when he was climbing down the tank, his foot slipped and he held onto the pipe with his arm. On cross-examination, he testified that he had both hands on the pipes, and as he was removing one hand he slipped. When questioned as to how far off the ground he was, he stated his legs were on the ground, but the top of his body was not. He testified that there were no witnesses to the fall. *Page 5 
9. On April 21, 2003, plaintiff presented to the Catawba Valley Occupational Health Center with complaints of left shoulder pain. Plaintiff testified that this was the first medical treatment he sought, which was over three weeks past the alleged date of injury. Plaintiff reported that he was on top of a hydraulic tank, and was sliding down the rails to come down and his foot slipped. He reported that he grabbed hold of a pipe with his left arm as he was falling, and that he struck his left arm as he was unable to catch himself with the right as he fell. An x-ray of the left shoulder revealed no fractures or dislocations. Plaintiff followed up at this facility on April 28, 2003, and was diagnosed with a left rotator cuff strain.
10. In May and June 2003, plaintiff was seen at Lake Hickory Family Care by Dr. Walker. He was diagnosed with neck/trapezius strain. Dr. Walker eventually referred plaintiff to Dr. McCloskey, who ordered an MRI which showed abnormalities at C4 through C7. Dr. McCloskey thought plaintiff was a surgical candidate.
11. On June 10, 2003, plaintiff was seen by Dr. Sarzier at Catawba Valley Neurosurgical and Spine Services. He stated that on March 27, 2003, he was working on a hydraulic tank when he started to slip off of it, but had his hand on a pipe, but was able to keep himself from falling a significant distance by holding on with his left arm. Dr. Sarzier noted that plaintiff had difficulty answering the time line questions and seemed overly concerned with the insurance part of the injury.
12. Dr. Sarzier reviewed plaintiff's MRI dated June 5, 2003, noting that it showed fusion at C6-7 with significant stenosis and spondylosis from C4-5 to C5-6. Although Dr. Sarzier felt the findings on the MRI were significant, they did not coincide with an acute type of onset as one would expect based upon plaintiff's description of the injury. During his *Page 6 
deposition, Dr. Sarzier testified that the type of stenosis plaintiff had tended to be more of an acquired or congenital condition over time. He wrote plaintiff out of work until June 19, 2003.
13. On June 19, 2003, plaintiff followed up with Dr. Sarzier, who noted that plaintiff's EMG/NCV came back negative for brachial plexopathy.
14. On June 23, 2003, Dr. Sarzier wrote a note for plaintiff to return to work at full duty. Plaintiff called on June 26, 2003 and requested that he be written out of work. Dr. Sarzier's notes indicate that the return to work stood because plaintiff had cervical stenosis, but the condition was chronic. Dr. Sarzier stated there was nothing to keep plaintiff out of work.
15. On July 31, 2003, plaintiff returned to Dr. Sarzier. Plaintiff reported to Dr. Sarzier that while at work on Tuesday, July 29, 2003, he was walking across a pile of trash and slipped on something. Plaintiff has not filed a Form 18 for this claim. He reported severe pain in his shoulder and neck, and decreased strength in his left upper extremity. He reported no numbness to light touch or pin prick. Dr. Sarzier ordered a new MRI of the left shoulder and cervical spine as well as x-rays. Dr. Sarzier returned plaintiff to work and issued a 15 pound lifting restriction.
16. On August 14, 2003, plaintiff followed up with Dr. Sarzier. Dr. Sarzier noted that the cervical x-rays and MRI did not show new pathology. The left shoulder x-ray did have some evidence of supraspinatus tendonitis and some questionable AC joint laxity. It was felt this was consistent with anatomical variant. Because plaintiff felt the majority of his pain was in his shoulder and not his neck, Dr. Sarzier recommended plaintiff be evaluated by a shoulder physician, Dr. Liljeberg. He was given a note to stay out of work until he was evaluated by Dr. Liljeberg. *Page 7 
17. Plaintiff was seen by Dr. Liljeberg in August and September 2003. To rule out a labral tear, Dr. Liljeberg ordered an arthrogram. The arthrogram showed an intact rotator cuff and anterior superior labrum appearance compatible with sublabral foramen. The changes on the arthrogram were chronic in nature and not acute. Dr. Liljeberg did not believe plaintiff would be improved with surgical intervention regarding his shoulder. Dr. Liljeberg testified that he did not find plaintiff's subjective complains of pain to be truthful or credible. Dr. Liljeberg testified that he did not think plaintiff sustained any injury to the shoulder during an incident on March 27, 2003. The undersigned find Dr. Liljeberg's testimony to be credible.
18. Plaintiff did not treat with Dr. Sarzier from September 18, 2003 until December 2003. Plaintiff underwent surgery on December 8, 2003. On that date, Dr. Sarzier performed a C3, C4, C5, C6, C7 partial laminectomy with posterolateral instrumentation and fusion, reduction of the Swan neck deformity, and placement of Songer cable from C2 through C7. A fusion was performed using local bone graft. A left sided foraminotomy was also performed at C3/4, C4/5 and C5/6.
19. On January 15, 2004, plaintiff presented to Dr. Sarzier complaining of left arm weakness. On exam, plaintiff had no evidence of atrophy of the arm and no sensory deficits. Dr. Sarzier stated he was "hard pressed to associate . . . the weakness that had continued, despite adequate decompression." Dr. Sarzier also opined that he was hard pressed to associate plaintiff's weakness with any specific event in view of no sensory deficits. Further, if plaintiff had true denervation, there would have been some atrophy of the arm. Plaintiff's subjective complaints were not consistent with the objective findings.
20. On March 18, 2004, plaintiff returned to Dr. Sarzier. An EMG/NCV study on March 8, 2004 revealed evidence of some possible denervation. Dr. Sarzier stated that the *Page 8 
findings did not fit plaintiff's symptomatology. Dr. Sarzier recommended an MRI of the neck to prove or disprove any demyelinating issues that the studies pointed to, as well as further compression. There were no findings on the MRI consistent with the EMG nerve conduction study. Dr. Sarzier testified that the results of the MRI called into question the findings of the EMG nerve conduction study.
21. Plaintiff testified at the hearing before the deputy commissioner that he did not seek medical treatment between March 30, 2004 and June 17, 2004. Plaintiff presented to Dr. Sarzier on June 17, 2004, with complaints of continued shoulder pain and weakness. Dr. Sarzier ordered an MRI of the brachial plexus, which was normal.
22. The undersigned find that based on plaintiff's descriptions of the claim to the employer, in his recorded statement, at the hearing, and in various medical records, plaintiff has not given a consistent description of the alleged March 27, 2003 injury.
23. Based upon the lack of objective evidence of injury, plaintiff's history of cervical and shoulder problems, and the delay in reporting his symptoms, there is insufficient evidence of record to determine by the greater weight that plaintiff's current cervical and upper extremity problems are causally related to the March 27, 2003 fall at work.
24. When asked his medical opinion regarding causation in this claim, Dr. Sarzier stated that he felt the temporal association between the fall and plaintiff's onset of symptoms pointed towards the fall being the cause, but indicated that he would have expected to find evidence on imaging or nerve testing that would associate the two. Dr. Sarzier also responded to the question of causation by testifying that he never determined whether plaintiff's symptoms were originating from the neck or shoulder. However, if plaintiff did not have symptoms prior to the fall at work, that event probably aggravated his condition. *Page 9 
25. Given the speculative nature of Dr. Sarzier's medical opinions in this case, his opinion is deemed by the undersigned to be insufficient to prove plaintiff's cervical and upper extremity problems are causally related to the alleged fall.
26. The greater weight of the evidence shows that plaintiff did not suffer an injury by accident.
27. The greater weight of the evidence shows that even if plaintiff did fall at work, plaintiff has failed to prove that his current condition is causally related to the fall.
28. Within the time period required pursuant to N.C. Gen. Stat. §97-18, after receiving actual and written notice of plaintiff's alleged injury, defendant failed to file the prescribed Industrial Commission Form 61.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that he sustained an injury by accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. Even if plaintiff has established that he sustained a compensable injury by accident, he has not met the burden of showing that his medical condition was causally related to the alleged injury by accident as the medical evidence presented was speculative. Holley v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003). Young v. Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
3. Defendant failed to timely file an Industrial Commission Form 61 pursuant to N.C. Gen. Stat. § 97-18(c) and Industrial Commission Rules 601 and 802(2). *Page 10 
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits must be, and is hereby, DENIED.
2. Defendant is fined $500.00 for its failure to timely file Industrial Commission Form 61.
This the ___ day of January, 2006.
S/______________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________________ THOMAS J. BOLCH COMMISSIONER *Page 1